IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Timothy Lee Wright, | ) |
|               Plaintiff, | ) Civil Action No. 5:18-cv-233-TMC |
| v. | ) **ORDER** |
| Sergeant Travis Guess and Officer Joshua Silva, | ) |
|               Defendants. | ) |

Plaintiff, Timothy Lee Wright ("Wright"), a state prisoner proceeding *pro se*, brought this 42 U.S.C. § 1983 action against Defendants Sergeant Travis Guess ("Guess") and Officer Joshua Silva ("Silva") (collectively "Defendants") alleging that they violated his constitutional rights. (ECF No. 1). Defendants filed a motion for summary judgment (ECF No. 52), and Wright filed a response in opposition (ECF No. 57).

Pursuant to 28 U.S.C. § 636(b) and District of South Carolina Local Civil Rule 73.02(B)(2), this case was referred to a magistrate judge for all pre-trial proceedings. This matter is now before this court on the magistrate judge's Report and Recommendation ("Report"), recommending that the court grant Defendants' motion for summary judgment.[1] (ECF No. 63). The magistrate judge alerted Wright of his right to file objections to the Report. *Id.* at 12. Wright filed timely objections (ECF No. 65), and this case is now ripe for review.

---

[1] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

## I. Background

Wright, an inmate with South Carolina Department of Corrections ("SCDC"), alleges that, on October 20, 2016, he was sleeping when Defendant Guess came to his cell at Lieber Correctional Institution ("LCI") and told Wright's cellmate to pack up because he was moving cells. (ECF No. 1 at 7). Wright states that Officer Robinson then told him that he would not like who they were going to place in the cell with him and that it was someone the officers knew Wright was "beefing with." *Id.* Wright claims that after learning the identity of his new cellmate, he asked to speak with the supervisor, and Officer Robinson said he would let the supervisor know. *Id.*

Wright states that about an hour went by before Defendants Guess and Silva approached his cell and told him to come to the door. *Id.* Defendants Guess and Silva then allegedly asked Wright what the problem was between Wright and his new roommate ("Tate"). *Id.* While they were talking, Wright states that other officers began walking Tate towards the door. *Id.* Wright says Defendant Guess ordered that he turn around to get cuffed, and that he did so "without any problems or responses." *Id.* at 8. However, once his back was turned, Wright states that Defendant Guess asked Wright what the problem was and then called Wright by his nickname. *Id.* Wright states that he attempted to turn back around to face Defendants, and Defendant Silva sprayed gas in Wright's face and on his upper body. *Id.* Wright states that he ran to the sink and tried to wash the gas off and that he yelled to Silva that he did not do anything to deserve to be gassed. *Id.* Wright states that while he was washing off the gas, Defendant Guess sprayed Wright with gas two more times. *Id.* Wright contends that the officers then slammed the door flap closed and left him inside for thirty minutes. *Id.* Wright claims that the Defendants then came back and

asked if he was going to get cuffed. *Id.* Wright was handcuffed, and Tate was moved into the cell. *Id.* Wright alleges that within an hour, Tate attempted to commit suicide. *Id.*

Wright contends that he was alone in his cell when the events occurred and that he committed no wrongdoing. (ECF No. 1-3 at 1). He states that he never assaulted an officer or another inmate on that date and did not refuse to obey a lawful direct order. *Id.* at 2.

On the other hand, Defendants state that Wright was gassed because he presented an "officer safety" issue during the placement of a prisoner. (ECF No. 52-1 at 2). They state that the gas was used "in an attempt to restore order and discipline." *Id.* Defendants state that they needed to handcuff Wright before they could open the door to place the new inmate in the cell. *Id.* Defendants contend that Wright did not want Tate in the cell because Wright claimed he would harm Tate. *Id.* Defendants state they directed Wright to come to the door to be handcuffed, but he refused, walked towards the back of his cell, grabbed a blanket, and covered his head "evidently anticipating that his non-compliance would lead to the use of chemical munitions." *Id.* Defendants state that after Wright refused to obey orders, Defendant Silva sprayed a burst of MK-4 chemical munitions into the cell. *Id.* at 3. Defendants state that Wright was then told over ten more times to come to the door and get cuffed, but he refused. *Id.* Defendants allege that Wright was warned that chemical munitions would be used if he continued to refuse, but he still refused. *Id.* Defendant Guess sprayed a burst of MK-9 chemical munitions into the cell. *Id.* When Wright still refused to be cuffed, the officers left the cell, and Guess assembled a Force Cell Movement Team to assist. *Id.* When the team assembled outside of the cell, Wright complied and was handcuffed. *Id.* Tate was placed in the cell. *Id.* According to the Defendants, Wright refused medical treatment, but the nurse noted that Wright displayed no signs of respiratory distress and appeared to be in good shape. *Id.*

As noted in the Report, Defendants filed two videos depicting some of the events. The first video, Exhibit K-Video 1, is six minutes and eighteen seconds long, and it depicts the following. At the start of the video, Wright can be seen standing at the door of the cell with the officers. The officers tell him to turn around. Wright then walks away backwards. At eleven seconds in, one of the officers says, "Come get cuffed." A second later, Wright grabs a blanket from the top of his bunk and places it over his head. While Wright was still placing the blanket over his head, the officer again says, "come get cuffed sir." One second later, one of the officers sprays a burst of chemical munitions into the cell. The officer then closed the flap to the cell.

A minute later, the officers opened the flap and then immediately closed the flap. Through the closed flap, an officer tells Wright to turn around. Wright can be heard coughing through the door. The officer opens the flap and says, "Come get cuffed sir." When Wright does not comply, the officer repeats his order. Wright walks away to the back of the cell.

Over the next minute, the officers order Wright to come be cuffed five more times. Wright is continuously coughing through this minute. At three minutes and forty-one seconds into the video, one of the officers says, "Only one more directive." However, no further directive is heard on the video before another spray of chemical munitions enters the cell ten seconds later.

After the second spray, the officers close the flap. Coughing can be heard from both Wright and the officers. The officers open the flap a minute and a half later and ask Wright if he will come get cuffed now. Wright stays facing away from the camera with a sheet on his head. At that time, Defendant Guess faces the camera, identifies himself, and says he is going to get a team together to get Wright cuffed. (ECF No. 52-12); Exhibit K-Video 1.

The second video is eight minutes and twenty seconds long, and depicts the following. At the beginning of the video, Defendant Guess introduces himself and explains that Wright has

refused to get cuffed. He states that the officers had sprayed gas twice into the cell that morning and that he has now assembled a team. The officers introduce themselves, though much of the introductions are inaudible. There is a registered nurse on the team.

The team reaches Wright's cell at one minute and fifty seconds into the video. At two minutes and twenty-eight seconds, Wright comes to the cell door with one hand shielding his eyes and one hand holding a white fabric over his mouth and nose. Wright complies with the officers' orders and is cuffed. Throughout this time, there is continuous coughing by both Wright and the officers. At three minutes and forty-eight seconds into the video, Wright faces the camera and is shown with something shoved up his nose.

At four minutes and forty seconds into the video, a group of officers walk Tate up to the cell. The officers tell Wright to back up and turn around in the cell. When he does not comply, they again order him to back up, which he does. Tate is placed in the cell, and the officers tell Wright to come be checked by medical. Wright's response is unintelligible. At seven minutes and fifty-three seconds into the video, Defendant Guess states that Wright has refused medical treatment. The nurse appears on the screen and states that Wright appeared to be okay and appeared to be breathing alright. At the end of the video, Wright is yelling at the camera and appears to threaten to "wet" the officers. (ECF No. 52-13); Exhibit L-Video 2.

## II. Legal Standard

Summary judgment is appropriate if, after reviewing the entire record in a case, the court is satisfied that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under the governing substantive law. *Id.*

### III. Discussion

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. It not only prohibits excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned. Determination of whether the Eighth Amendment has been violated requires analysis of subjective and objective components. *See Wilson v. Seiter*, 501 U.S. 294, 302 (1991). Specifically, when alleging an Eighth Amendment claim for excessive force, the prisoner must prove the official possessed a culpable state of mind (subjective component) and caused the prisoner a sufficiently serious deprivation or injury (objective component). *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). What must be established with regard to each component "varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

In regards to an excessive force claim, to establish the subjective component, an inmate must show that the prison official acted "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). In making this determination, courts should consider: (1) the need for application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; and (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them. *Id.* at 321.

The objective component measures the force used against "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotations omitted). The objective component is not

as demanding because "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . ." *Id.* (internal quotation marks omitted).

While courts recognize that a limited application of chemical munitions may be a "much more humane and effective" response than "a flesh to flesh confrontation with an inmate," it is also "generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain,' " the Fourth Circuit "has closely scrutinized the use of tear gas or mace . . . in correctional facilities." *Williams*, 77 F.3d at 763 (quoting *Soto v. Dickey*, 744 F.2d 1260 at 1262, 1270 (7th Cir. 2009)); *see also Iko v. Shreve*, 535 F.3d 225, 239-40 (4th Cir. 2008) (finding use of pepper spray during cell extraction of nonconfrontational inmate constituted excessive force). In doing so, courts recognize that "even when properly used, such weapons 'possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim.'" *Williams*, 77 F.3d at 763 (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984)). Thus, "although it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the 'totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment.'" *Id.* (quoting *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir.1984)).

In this case, Defendants assert, and the magistrate judge agrees, that Wright has not created a genuine issue of material fact concerning whether Defendants acted maliciously and sadistically, rather than in a good-faith effort to maintain or restore discipline. Accordingly,

Defendants contend that Wright has failed to meet the subjective component in *Whitley*. The court, respectfully, disagrees.

When viewing the facts in the light most favorable to Wright, as the court must on this motion for summary judgment, there exist genuine issues of material fact as to whether Defendants acted "maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. 320 – 21.  The court carefully viewed both videos that were provided by Defendants. As an initial matter, the court notes that the video begins right before the initial spraying of chemical munitions, so the encounter that Wright describes, where the officers allegedly came to his cell and told him they were placing someone he was "beefing with" in his cell and where Wright asks to speak to someone prior to the transfer, was not caught on video. As such, in viewing the facts in the light most favorable to Wright, the non-moving party, the court must credit Wright's factual account preceding the video.

Additionally, while the later portions of the encounter were captured on the video, the video is often not obviously contradictory of many of Wright's purported facts because it fails to provide an unobstructed view of the events.  So, the court has credited Wright's version of the record evidence where no obviously contradictory video evidence is available, as he is the non-moving party. While the video provides some reason to doubt the veracity of some aspects of Wright's account, it is not so "blatantly contradict[ory]" that the court may entirely disregard Wright's version of events for purposes of summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  Where the video obviously contradicts Wright's version of the facts, the court accepts the videos depiction instead of Wright's account. *See id.*  (stating that when a party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could

believe it, a court should not adopt that version of the facts for purposes of ruling on a summary judgment motion").

In considering the *Whitley* factors, taking the facts in the light most favorable to Wright, the court recognizes that a reasonable jury could conclude that the factors weigh in Wright's favor. In viewing the video, the court notes that after the initial directive to "come get cuffed," Wright backed away from the doorway. What he says is inaudible, though Wright claims he asked to speak to a supervisor about Tate being moved into his room. Then, within a few seconds, the officer gives another directive to "come get cuffed," as Wright was already placing a blanket over the top of his head. A mere one second after giving this directive, the officer sprays a burst of chemical munitions into the cell. With such a short period of time between the directive and the consequence for not following the directive, the court finds that a reasonable jury could conclude that Wright was not given an opportunity to attempt to comply with the directive before being sprayed.

As to the second spraying, the court recognizes that it had been several minutes since Wright had been initially sprayed. He had been directed several times to come to the door to get cuffed. However, at three minutes and forty-one seconds into the video, one of the officers says that he will give "one more directive." No further directive was ever given before a subsequent spray of chemical munitions entered the cell. Here, the court finds that a reasonable jury could conclude that Wright was told that he had an opportunity to comply before any further munitions would be sprayed, and then no such opportunity was ever actually given. Accordingly, in weighing the Whitley factors, a reasonable jury may conclude that this spraying, too, was unwarranted or excessive given the circumstances.

Moreover, even if the two separate sprayings had not themselves raised concerns about the officers' intent under *Whitley*, "the continued application of force may give rise to an inference that force was used for malicious or punitive purposes." *Brooks v. Johnson*, ___ F.3d ___, 2019 WL 2063365, at *6 (4th Cir. May 10, 2019) (citing *Iko*, 535 F.3d at 239–40, 240 n.11) (holding that although initial use of pepper spray to carry out cell extraction appeared warranted, four additional bursts of pepper spray - including one when inmate was lying on floor - gave rise to reasonable inference that force was applied maliciously). Here, with both instances of spraying raising concerns as to the officers' intentions, the court finds that the combined effect of both instances further precludes the court from being able to grant summary judgment.

Accordingly, based on the differing accounts of the facts leading up to Defendants' use of force and the timing between the directives and the spraying, the court is unable to grant Defendants' summary judgment motion. *See Hinojos v. Bowers*, No. 2:14-cv-1800-DCN, 2015 WL 4878812, * 8 (D.S.C. Aug. 14, 2015) (citations omitted) ("[T]he court holds that there is a genuine issue of material fact as to whether [the defendant] used excessive force against [plaintiff]; therefore, the court cannot determine at the summary judgment phase that [the defendant's] actions were objectively reasonable for purposes of granting qualified immunity.")

Finally, the court disagrees with the Report's analysis of qualified immunity in this case, and instead finds that, in light of the significant variations in the parties' factual accounts, it cannot make a finding as to qualified immunity. *See Hinojos*, 2015 WL 4878812, at *8 (stating that because genuine disputes of material fact precluded summary judgment, the court could not determine at the summary judgment phase that the officer's actions were objectively reasonable for purposes of granting qualified immunity).

## I. Conclusion

Accordingly, the court, respectfully, declines to adopt the Report (ECF No. 63). For the reasons stated herein, the motion for summary judgment (ECF No. 52) is **DENIED.**

**IT IS SO ORDERED.**

> s/Timothy M. Cain
> Timothy M. Cain
> United States District Court Judge

June 19, 2019

Anderson, South Carolina

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if applicable.